IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 4:14-cr-103 |
| | ) | |
| KENT LEROY SORENSON, | ) | ATTACHMENT A |
| | ) | |
| Defendant. | ) | STIPULATED STATEMENT |
| | ) | OF FACTS |

The parties agree and stipulate as follows:

**BACKGROUND**

1)      At all relevant times, Kent Leroy Sorenson ("Sorenson") was a resident of the Southern District of Iowa, was an elected member of the Senate of the State of Iowa, and was the owner of Company Z.

2)      At all relevant times, The Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Sections 431, et seq., ("Election Act") limited corruption and the appearance of corruption in the election of candidates for federal office, including the office of President of the United States, in pertinent part by providing for public disclosure of the expenditures by federal election campaigns:

   a.   The Election Act required the authorized committee of a candidate for President of the United States to make reports to the Federal Election Commission ("FEC").

   b.   The Election Act required the authorized committee of a candidate for President of the United States to report any expenditure by the committee over $200 within the calendar year that the committee made to meet a candidate or

1

committee operating expense, together with the date, amount, and purpose of
such operating expenditure.

    c.  The FEC in turn reported to the public the expenditures reported by the
authorized committee of a candidate for President of the United States.

3)    At all relevant times, the FEC was an agency and department of the United States
with jurisdiction to enforce the Election Act, and to receive and publicly report accurate
information to the public about expenditures to influence federal elections.

4)    At all relevant times, the Federal Bureau of Investigation ("FBI") was an agency
and department of the United States with jurisdiction to investigate criminal violations of the
Election Act.

5)    Political Committee 1 was the authorized political committee registered with the
FEC as accepting contributions and making expenditures to further the nomination and election
of Candidate A to the office of President of the United States during the 2012 federal election
cycle.

6)    Political Committee 2 was the authorized political committee registered with the
FEC as accepting contributions and making expenditures to further the nomination and election
of Candidate B to the office of President of the United States during the 2012 federal election
cycle.

7)    Political Committee 3 was a political action committee affiliated with Candidate
A, and was allowed to contribute up to $5,000 to authorized committees of federal candidates.

8)    From in or about March 2011 to in or about December 2011, Sorenson publicly
worked for the election of Candidate A to the office of President of the United in exchange for

2

$7,000 to $7,500 per month, first from Political Committee 3 and later from Political Committee 1, which passed through a political consulting company and Company Z.

**OFFENSE CONDUCT**

9)     While Sorenson was working for the campaign of Candidate 1, representatives of Candidate 2 were attempting to persuade Sorenson to switch allegiance to Candidate 2.

10)     From on or about October 29, 2011, to on or about December 26, 2011, Sorenson or his representative secretly negotiated directly and indirectly with agents of Political Committee 2 to switch his support to Candidate B in exchange for secret payments.

11)     On or about December 26, 2011, Sorenson met with Political Operative D, an agent of Candidate B and Political Committee 2 at a restaurant in Altoona, Iowa; Political Operative D then and there gave Sorenson, through Sorenson's spouse, a check for $25,000.00 ("the check"), in return for Sorenson's public support and work for Candidate B, which check was drawn on the account of Company X, which was in turn owned by the spouse of Political Operative D.

12)     Sorenson accepted and held the check, rather than cashing it, initially because he was undecided on switching campaigns; later the check served as concealed security against the loss of anticipated payments for two months of work for Candidate A, and as concealed security for future concealed payments of approximately $8,000 per month from Candidate B after Sorenson switched his public support from Candidate A to Candidate B.

13)     On or about December 28, 2011, at a political event in Des Moines, Iowa, Sorenson publicly announced his switch of support and work from Candidate A to Candidate B.

14)     At or about the time of Sorenson's switch to support of Candidate B, Political Operative D and Sorenson agreed that Political Committee 2 would secretly pay Sorenson

3

approximately $8,000 per month from in or about January to in or about July 2012, and Political

Committee 2 did thereafter, through the actions of Political Operative D and others, pay

Sorenson approximately $8,000 per month (totaling at least $73,000 in calendar year 2012), and

each payment was concealed from the FEC and the public by transmittal through, first, Film

Production Company W (which was not affiliated with any federal candidate or committee and

which did no work for federal candidates or committees), and second through Company Z, and

then, finally, to Sorenson and his spouse.

15)    On or about December 29, 2011, in response to criticism of his switch to the

Candidate B, and in an effort to conceal the payments to compensate him for that switch, Sorenson

gave interviews denying allegations that he, Sorenson, was receiving any money in return for his

support of Candidate B, and noting that reports to be filed by Political Committee 2 with the FEC

would show that Political Committee 2 made no payments to him.

16)    Political Committee 2 filed regular reports with the FEC during calendar year 2012,

which omitted any reference to the agreed expenditures of approximately $73,000 to Sorenson,

other than the concealing payments to Film Production Company W.

17)    Sorenson knew that agents of Political Committee 2 would and did falsely omit his

name and other identifying information from required reports to the FEC.

18)    One of the reasons why Sorenson did not want payments to him from Political

Committee 1 or Political Committee 2 disclosed to the FEC, and then by the FEC to the public, was

because of possible interpretation of Iowa Senate Ethics Rules prohibiting sitting Senators from

accepting payment from a political campaign, and on or about January 28, 2013, a former

employee of Political Committee 1, filed a complaint against Sorenson with the Iowa Senate

Ethics Committee, which, on or about May 1, 2013, asked the Chief Justice of the Iowa Supreme

4

Court to appoint an Independent Counsel to investigate some of the allegations contained in the complaint, who, on or May 10, 2013, appointed an Independent Counsel to the Iowa Senate Ethics Committee.

19)     On or about February 18, 2013, a complaint was filed with the FEC alleging violations of federal campaign finance laws regarding payments made to Sorenson by Political Committee 1 and Political Committee 2.

20)     On or about September 19, 2013, the Independent Counsel, took a sworn, transcribed, and videotaped deposition record from Sorenson, who then and there contemplated that both the FEC and the FBI were investigating the legality of the payments he received from Political Committee1 and Political Committee 2.

21)     During the deposition, the Independent Counsel asked Sorenson numerous questions about any money that Sorenson received from either Political Committee 1 or Political Committee 2, and, Sorenson specifically and falsely denied being paid by either Political Committee in return for his endorsement of the respective candidates or for his work on their behalf, and further falsely described the entities used to conceal the payments to him, including falsely characterizing Film Production Company W as  (a)   a political consulting firm that was seeking assistance from Sorenson in scouting shooting locations, and (b) also assisting Sorenson in potentially seeking higher office.

22)     For example, Sorenson made and caused a false transcript and videotape record during his sworn deposition in the following answers to the following questions for the purpose, among others, of impeding, obstructing, and influencing investigations by the FEC and FBI:

> "Q.     So when you say you were volunteering 50 hours a week, what do you mean?

5

A.      I was either volunteering or I was working or I was – I mean, it was just –

Listen, I don't believe I was paid to help [Candidate A].   But I did – I spent a lot of time

helping [Candidate A].

*** 

Q.      Let me ask this directly: Did the payments that [Company Z] received for –

or from [Film Production Company W], have anything whatsoever to do with the

[Candidate B] campaign?

A.      No."

23)     The acts Sorenson took in furtherance of the offenses charged in this case,

including the acts described as "Offense Conduct" above, were done willfully and knowingly with

the specific intent to violate the law.

24)     Sorenson acknowledges that the foregoing statement of facts does not (and is not

intended to) describe every detail of his conduct relating to the offenses charged in this case.


_____
Date

_____
Date


_____
Kent Leroy Sorenson

_____
F. Montgomery Brown, Esq.
Brown & Scott, P.L.C.
1001 Office Park Road, Suite 108
West Des Moines, Iowa 50265
Telephone: 515/225-0101
Facsimile: 515/225-3737
Email: hskrfan@brownscott.com

Jack Smith
Chief, Public Integrity Section

Date _8/27/14_          By: _____

Richard C. Pilger
Director, Election Crimes Branch
Robert J. Higdon, Jr.
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
Telephone: 202-514-1412
Telefax: 202-514-3003
E-mail:   richard.pilger@usdoj.gov
            bobby.higdon@usdoj.gov

John P. Sarcone
Polk County Attorney

Date _8.27-14_          By: _____

Polk County Justice Center
222 5th Avenue
Des Moines, IA 50309
Telephone: 515-286-3737
Telefax: 515-286-3428
E-mail: ctyatty@polkcountyiowa.gov